## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SEAN LEWIS JR.,                              :
                                             :
                                             :
    v.                                       :      Civil No. CCB-21-1159
                                             :
                                             :
CHRISTOPHER FLORIO.                          :
                                             :

### MEMORANDUM

Sean Lewis Jr. filed the five-count complaint now before the court against Officer Christopher Florio of the Baltimore City Police Department alleging constitutional and intentional tort claims arising from an allegedly unreasonable arrest in May 2018. Now pending before the court is the defendant's motion to dismiss. The motion is fully briefed and no oral argument is necessary. For the reasons explained below, the motion will be denied.

### BACKGROUND

Lewis's amended complaint alleges that in May 2018, Lewis, who was then fifteen, visited an elementary school in Baltimore, Maryland, to collect his younger brother from class. (Am. Compl., at ¶ 12, ECF 19). School administrators, however, declined to release Lewis's sibling to him. (*Id.* at ¶ 13). When Lewis explained that his mother had sent him to pick up his brother, the school nonetheless asked Lewis to leave, which Lewis did, retreating to the sidewalk outside the building. (*Id.* at ¶¶ 13-14). School administrators then called the Baltimore City Police Department ("BPD") to remove him. (*Id.* at ¶ 14).

The complaint alleges that the defendant, Officer Florio, was the first BPD Officer to respond. (*Id.* at ¶ 15). When he arrived, he found Lewis standing on the sidewalk in front of the

school. (*See id.* at ¶¶ 13, 15 & n.1). Officer Florio immediately drew his taser, training it on Lewis and continuing to aim it at him throughout their encounter. (*Id.* at ¶ 15). With his taser drawn, Officer Florio instructed Lewis to vacate the area. (*See id.*). Lewis complied, "le[aving] the vicinity of the school." (*Id.* at ¶¶ 15, 17).

Although, according to the complaint, Lewis complied with Officer Florio's instructions— and even though Officer Florio never formally placed Lewis under arrest—the officer continued to engage Lewis for another fifteen minutes while continuing to aim his taser at the teenager. (*Id.* at ¶¶ 15-16). At some point during this prolonged interaction, Officer Florio deployed the taser. (*Id.* at ¶ 17). The taser struck Lewis "in his gonads" with such force that he "had to have the prong surgically removed from one gonad." (*Id.* at ¶¶ 17-18). The complaint provides no explanation for what prompted Officer Florio to deploy his taser, alleging instead that he did so "without probable cause, legal justification[, or] threat to" himself. (*Id.* at ¶ 17).

After Officer Florio tased Lewis's genitalia, he handcuffed him, took him into police custody, and transported him to the hospital where he placed him on a juvenile hold. (*Id.* at ¶¶ 19-20). At the hospital, Lewis underwent "surgery to remove the taser from his testicles." (*Id.* at ¶ 20). He was then released. (*Id.*). Lewis was never charged with a crime. (*Id.*).

On May 12, 2021, Lewis filed a complaint in this District to remedy his injuries stemming from the incident. (Compl., ECF 1). On October 6, 2021, he filed the now-operative amended complaint. (ECF 19). The operative complaint asserts five claims against Officer Florio stemming from the allegedly unlawful arrest. As a product of these claims, Lewis alleges he suffered a variety of physical and emotional injuries and related expenses.

## LEGAL STANDARDS

### I. Motion to Dismiss

Officer Florio moves to dismiss the case in full for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF 20, Def.'s Mot. to Dismiss). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

## ANALYSIS

The complaint alleges that Officer Florio illegally arrested Lewis in violation of the United States and Maryland Constitutions, and also alleges false arrest, false imprisonment, and battery in violation of state tort law. Articles 24 and 26 of the Maryland Declaration of Rights are coextensive with their federal analogs, the Fourth and Fourteenth Amendments. *See, e.g.*, *Dent v.*

3

*Montgomery Cnty. Police Dept.*, 745 F. Supp. 2d 648, 661 (D. Md. 2010). Similarly, under Maryland law, the "elements of false arrest and false imprisonment are [essentially] identical. Those elements are: 1) the deprivation of the liberty of another; 2) without consent; and 3) without legal justification." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). Battery, meanwhile, is an intentional and unlawful "harmful or offensive contact with another without that person's consent." *Beall v. Holloway-Johnson*, 130 A.3d 406, 416 (Md. 2016) (quoting *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999)).

With respect to the false imprisonment and false arrest claims, Officer Florio argues only that the complaint cannot satisfy the third element—whether he had legal justification to arrest Lewis. (ECF 20 at 7-9). The constitutional claims turn on the same question. And Officer Florio does not dispute that if the complaint plausibly alleges false arrest and false imprisonment, it alleges a plausible claim of battery as well. (*See* ECF 20 at 12-13). Thus, if Officer Florio's arrest of Lewis violated the Fourth Amendment, liability may attach for each claim.

**I. Officer Florio's Liability**

The Fourth Amendment protects the "right of the people to be secure in their persons . . . against unreasonable searches and seizures." *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019) (quoting U.S. Const. amend. IV). An arrest violates the Fourth Amendment if it is not supported by probable cause. *Id.* "Probable cause is determined by a 'totality-of-the-circumstances' approach." *Smith v. Munday*, 848 F.3d 248, 253 (4th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). The analysis "turns on two factors: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Id.* (quoting *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016)). Courts "look to

the information available to the officer on the scene at the time" and "apply an objective test to determine whether a reasonably prudent officer with that information would have thought that probable cause existed for the arrest." *Hupp*, 931 F.3d at 318 (citing *Gagnon*, 831 F.3d at 185).

In this case, Lewis asserts Officer Florio arrested him without probable cause. On Lewis's account, he had minimal interaction with school administrators: He tried to pick up his younger brother from school, but school officials would not release the younger child to Lewis and asked him to leave. In response, Lewis explained that his mother had sent him to pick up his brother. The administrators nevertheless maintained their position that Lewis could not pick up his brother and again asked him to leave, which Lewis did, exiting to a sidewalk in front of the school.

The allegations describing Lewis's interaction with Officer Florio are similarly straightforward. Lewis alleges that Officer Florio arrived while Lewis was waiting on the sidewalk in front of the school and asked Lewis to leave the area, which Lewis did. Although Lewis complied with Officer Florio's instruction, the complaint alleges Officer Florio remained engaged with Lewis for another fifteen minutes, following him outside the vicinity of the campus. The complaint maintains that at this point—with no intervening justification—Officer Florio tased and arrested Lewis. Accepting these allegations as true and drawing all inferences in Lewis's favor, it is difficult to see what crime Officer Florio may have suspected Lewis of committing that could supply probable cause justifying the arrest. This difficulty is exacerbated because Officer Florio never charged Lewis with a crime, leaving the court—at this stage—to speculate about what possible crime Officer Florio might have arrested Lewis for.

In his motion to dismiss, Officer Florio weaves a more colorful narrative of Lewis's actions. In his telling, Lewis "def[ied]" school administrators' "orders to leave the premises for over fifteen [] minutes." (ECF 20 at 8). Moreover, Officer Florio asks the court to infer from the

officer's use of a taser that Lewis "posed a threat to Defendant and others present on the school's premises." (*Id.*). As a result, Officer Florio asserts he had probable cause to arrest Lewis for violating Maryland's disturbing the peace law. (*Id.*).

Whether or not Officer Florio's characterization of the facts is accurate, the court cannot accept it at this stage. First, the complaint does not support Officer Florio's contention that Lewis defied school administrators for over fifteen minutes. To the contrary, the complaint evinces a brief interaction with school administrators in which Lewis asked to retrieve his brother, explained his basis for doing so, and after being told he could not, complied with administrators' request to leave the school. It is Lewis's interaction with Officer Florio leading away from school grounds— not his interaction with school administrators—that the complaint alleges lasted "for at least fifteen minutes." (ECF 19 at ¶ 15).

Second, at this stage the court cannot adopt Officer Florio's desired inference that because he deployed a taser, Lewis must have posed a threat. Lewis specifically alleges that Officer Florio deployed his taser without justification. Indeed, to adopt Officer Florio's inference would be to assume the conclusion to much of the suit. And it is in the plaintiff's favor—not Officer Florio's— in which the court must draw its inferences.

Third, Maryland's disturbing the peace statute makes it a crime to "willfully act in a disorderly manner that disturbs the public peace." Md. Code Ann., Crim. Law § 10-201(c)(2) (West). Violations of the statute typically involve "loud" or "belligerent" conduct. *See, e.g.*, *Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 543 (D. Md. 2016); *see also Spry v. State*, 914 A.2d 1182, 1187 (Md. 2007) ("breach of the peace . . . signifies disorderly, dangerous conduct"). There are no allegations here that Lewis acted in either a loud or a belligerent manner; instead, the

6

complaint alleges Lewis was consistently compliant, adhering first to the instructions of school officials and then to those of Officer Florio. Accepting these allegations as true, as the court must, the complaint provides no basis on which Officer Florio might have had probable cause to arrest Lewis for disorderly conduct or any other crime.

For all these reasons, the court concludes that accepting the allegations in the complaint as true and drawing all inferences in Lewis's favor, Lewis has plausibly alleged that Officer Florio lacked probable cause to arrest him. Officer Florio does not dispute that he did in fact arrest Lewis, nor does he provide any other justification for the arrest. Thus, the complaint plausibly alleges the arrest violated the Fourth Amendment, and it follows that it alleges plausible violations of the Maryland Constitution and state tort law as well.[1]

## II. Officer Florio's Official Immunity

Officer Florio asserts that even if he effected an unlawful arrest, he is immune from suit for certain claims under Maryland common law. Notably, Officer Florio does not raise the defense of qualified immunity with respect to the federal claims. Nor does he raise state statutory immunity under the Maryland Tort Claims Act as a bar to the state law claims. Instead, Officer Florio raises

---

[1] Perhaps out of an abundance of caution, the defendant's motion to dismiss "presumes Plaintiff intended to bring claims under 42 U.S.C. § 1983 that are based on excessive use of force" in addition to the claims for "false arrest/imprisonment." (ECF 20 at 7). The court will not make the same presumption. The Supreme Court has unequivocally held that excessive force "claims are properly analyzed under the Fourth Amendment[]." *Graham v. Connor*, 490 U.S. 386, 388 (1989). The complaint, however, makes no mention of a claim of excessive force in connection with the Fourth Amendment, (ECF 19), and the plaintiff's opposition brief clarifies that "Defendant is being sued for unlawfully seizing and arresting the Plaintiff, not for merely using excessive force to affect [sic] a lawful arrest. Any potential excessive force issue goes to damages only in this case not the underlying claims themselves," (Opp. to Mot. to Dismiss at ¶ 11, ECF 23). The court may not entertain (or dismiss, as the defendants request in their reply, (ECF 25 at 5)) a claim not raised in the complaint; Lewis must seek leave to amend his complaint should he wish to pursue a claim for excessive force.

only the defense of common law public official immunity as to each of the state law claims.[2]

Maryland's common law public official immunity applies to officials "who perform negligent acts" while performing discretionary official duties. *Houghton v. Forrest*, 989 A.2d 223, 227 (Md. 2010). Under Maryland law, "police officers are public officials" who exercise discretionary duties when carrying out an arrest. *Id.* at 227-28. Common law official immunity therefore applied to Officer Florio's arrest of Lewis here.

The Maryland Court of Appeals has repeatedly explained, however, "that common law public official immunity" applies only to suits arising from *negligent* conduct. *Id.* It "does not apply to intentional torts" or constitutional torts. *See id.* at 228 & n.1; *see also, e.g, Lee v. Cline*, 863 A.2d 297, 305 (Md. 2004) ("Maryland common law qualified immunity . . . has no application in tort actions based upon alleged violations of state constitutional rights."). Indeed, the Court of Appeals has specifically held the doctrine does not apply to state law claims for false imprisonment and false arrest. *Houghton*, 989 A.2d at 227-29. Under this precedent, Officer Florio's assertion of common law immunity from Lewis's state law claims fails.

In addition to his general invocation of public official immunity as a defense to the state law claims, Lewis also purports to invoke a specific "affirmative defense" that he claims "exists for police officers" with "respect to a civil claim of battery." (ECF 20 at 12). He relies on *Davis v. Muse*, 441 A.2d 1089, 1091 (Md. 1982) for the proposition that a police officer can be liable for battery only if he acts with "malice," in other words, with "improper motivations or [] ill will." (ECF 20 at 12). *Muse*, however, discusses the same common law public official immunity at issue

---

[2] The court notes the immunities Officer Florio does not raise only to clarify the scope of the following analysis; it does not suggest Officer Florio would be entitled to either form of immunity on this record.

in *Houghton* and *Lee*—not some separate carve out for battery claims—and "does not accurately reflect Maryland law, at least as it stands today." *Touko v. United States*, No. GJH-20-1113, 2021 WL 2685328, at *2 (D. Md. June 29, 2021). In the forty years since *Muse* was decided, "Maryland courts have [] repeatedly clarified that public official immunity does not apply in the case of intentional torts, such as battery," *id.* at *3 (collecting cases), and a mountain of case law now refutes Officer Florio's position, *see, e.g.*, *Lee*, 863 A.2d at 305-06 (collecting cases). The stray result in *Muse* notwithstanding, Officer Florio's affirmative defense to battery can be no more successful than his defense to the other state law claims.

## CONCLUSION

In sum, the complaint plausibly states claims of arrest without probable cause in violation of the United States Constitution and the Maryland Constitution, as well as state law claims for false arrest, false imprisonment, and battery. Officer Florio's affirmative defense of common law public official immunity fails because the defense does not apply to constitutional or intentional torts. For these reasons, the motion to dismiss will be denied.

A separate order follows.


September 26, 2022                           _____/s/_____
Date                                        Catherine C. Blake
                                            United States District Judge

9